249 P.3d 193 (2011)
In the Matter of the DEPENDENCY OF J.M.R., b.d. 07/12/02, a minor child.
John Charles Rousseau, Appellant,
v.
State of Washington, Department of Social and Health Services, Respondent.
No. 64711-3-I.
Court of Appeals of Washington, Division 1.
April 4, 2011.
*194 Casey Grannis, Nielsen Broman & Koch, PLLC, Seattle, WA, for Appellant.
Martin Wade Hodges, Attorney at Law, Mukilteo, WA, for Guardian Ad Litem (J.M.R.).
Thomas Robinson O'Neill, WA, Attorney General, Seattle, WA, Lynn E. Lichtenberg, Law Offices Of Lawrence Harris, Everett, WA, Amee Jean Sobczak Tilger, Attorney Generals Office, Wenatchee, WA, for Respondent.

PUBLISHED IN PART OPINION
SCHINDLER, J.
¶ 1 On the second day of trial, John Charles Rousseau entered into a stipulation to terminate his parental rights to his son J.M.R. After an extensive colloquy, the court found Rousseau's decision was knowing, intelligent, and voluntary, and entered the order terminating Rousseau's parental rights to J.M.R. Rousseau appeals the order denying his CR 60(b) motion to vacate the stipulation and the order terminating his parental rights, arguing that the court did not have the statutory authority to accept the stipulation. We hold that the court had the authority to accept the stipulation in a termination where the court ensures the parent knowingly, intelligently, and voluntarily enters *195 into a stipulation to terminate parental rights. In the unpublished portion of the opinion we conclude Rousseau cannot establish ineffective assistance of counsel, and affirm.

FACTS

Dependency Petition
¶ 2 J.M.R. was born on July 12, 2002. Angelique Porter is his mother. John Rousseau is his father. Porter and Rousseau have an extensive history of drug abuse and domestic violence. Rousseau used methamphetamine and cocaine for at least 25 years, and has several convictions for domestic violence assault and violations of domestic violence no contact orders. Both Rousseau and Porter have a communicable terminal illness.
¶ 3 Child Protective Services (CPS) began receiving reports of neglect of J.M.R. by his parents in 2004. In September 2005, J.M.R.'s maternal grandmother in California filed a petition to be appointed the guardian of J.M.R. and his two half brothers. But after the court granted her guardianship petition, the grandmother immediately returned three-year-old J.M.R. to his parents.
¶ 4 In March 2006, CPS received a referral expressing concern about J.M.R.'s well-being and unsanitary conditions in the home. The referral states that Rousseau was taken to the hospital by the paramedics due to confusion. The referral describes the unsanitary condition of the apartment and concern that even though three-year-old J.M.R. had bronchitis, his parents continued to smoke in his presence.
Cigarette butts were everywhere, spilling out of ashtrays and all over the floor.... Piles of garbage and dirty clothes made it difficult for paramedics to maneuver through the apartment. Bedroom doors were difficult to open due to all the stuff piled around. Old food was on the floor and coffee table. Unsanitary items were within easy reach of [J.M.R.]
¶ 5 On April 5, 2007, at the conclusion of a hearing on Parker's request for a no contact order against Rousseau, a Snohomish County Superior Court Commissioner ordered CPS to place J.M.R. in protective care. Porter testified at the hearing that Rousseau assaulted her, choked her, and threatened to kill her.
¶ 6 On April 10, the Washington State Department of Social and Health Services (DSHS) filed a dependency petition. The petition alleged J.M.R. was abused or neglected and has no parent or guardian capable of adequately caring for him. The petition states that Porter and Rousseau had only sporadically parented J.M.R. and the maternal grandmother would not "ever parent [J.M.R.] herself." Rousseau was represented by appointed counsel at the initial shelter care hearing on April 10. The same attorney represented Rousseau throughout the proceedings.
¶ 7 An order of dependency as to Porter was entered on July 10. At the fact-finding hearing on September 6, the court found J.M.R. dependent as to Rousseau. The order states, in pertinent part:
The father has not consistently parented the child, or provided for the child's needs. The father has acknowledged that he has a life-threatening illness for which he is frequently hospitalized. He is not available to be a placement resource for the child by his own admission. The child's legal guardian has indicated that she is too old to care for the child.
The disposition orders required DSHS to offer services to Porter and Rousseau. The court ordered Rousseau to obtain domestic violence and drug treatment assessments and follow all treatment recommendations.[1]

Petition to Terminate Parental Rights
¶ 8 On April 16, 2008, DSHS filed a petition to terminate the parental rights of Porter and Rousseau. DSHS alleged that all necessary services capable of correcting parental deficiencies in the foreseeable future were offered but the parents failed to meaningfully engage in services or substantially address their parental deficiencies. The termination trial was initially scheduled for *196 March 23, 2009, but at Rousseau's request the court continued the trial to April 13.
¶ 9 On March 23, Rousseau filed a dependency guardianship petition. In the dependency guardianship petition Rousseau admits DSHS had offered all services capable of correcting his parental deficiencies and there was "little likelihood that conditions will be remedied so the child can be returned" in the foreseeable future. The petition states, in pertinent part:
(a) The child has been found to be a dependent child under RCW 13.34.030.
(b) A dispositional plan has been entered pursuant to RCW 13.34.130.
(c) The child has been removed, or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030.
(d) The services ordered under RCW 13.34.030 and 13.34.136 have been offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided by a preponderance of the evidence related to the child's dependency case.
(e) There is little likelihood that conditions will be remedied so the child can be returned to the parents in the near future by a preponderance of the evidence related to the child's dependency case.
(f) A guardianship rather than termination of the parent-child relationship or continuation of the child's current dependent status would be in the best interest of the child.
¶ 10 At the time of the trial on April 13, J.M.R. was six-years-old and he had been living with the same foster family for more than a year. At the beginning of trial, Porter agreed to relinquish her parental rights to J.M.R. and agreed to an open adoption agreement with the foster parents that allowed her two visits a year with J.M.R.
¶ 11 On the first day of trial, the court heard testimony from Porter, Rousseau, and his drug treatment provider. The next morning, DSHS presented the testimony of a domestic violence treatment provider and the DSHS visitation supervisor. Following a recess to discuss settlement, Rousseau agreed to enter into a stipulation and order voluntarily terminating his parental rights to J.M.R. In exchange, DSHS and the adoptive parents agreed to an open adoption agreement that allowed Rousseau four visits a year.
¶ 12 After the stipulation was prepared, Rousseau insisted on striking the phrase: "[A]ll of my parental rights to [J.M.R.] be permanently terminated," and inserted: "[J.M.R.] be placed with the family where he is currently living permanently." Thereafter, Rousseau signed and dated the stipulation. The stipulation provides, in pertinent part:
3. The court has found [J.M.R.] to be dependent pursuant to RCW 13.34.030(5), and the court has entered a Dispositional Order pursuant to RCW 13.34.130 which was filed on September 6, 2007.
4. [J.M.R.] has been removed from my custody for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(5).
5. The services ordered under RCW 13.34.136 have been expressly and understandably offered or provided to me and all necessary services, reasonably available, capable of correcting my parental deficiencies within the foreseeable future have been expressly and understandably offered or provided to me.
6. There is little likelihood that conditions will be remedied so that the child can be returned to me in the near future.
7. Continuation of the parent and child relationship clearly diminishes the child's prospects of early integration into a stable and permanent home.
8. I realize that it is in the best interest of the above-named child that [J.M.R.] be placed with the family where he is currently living permanently.
9. I understand that the legal effect of this voluntary termination of my parental rights to the above-named child will be to *197 divest me of all legal rights and obligations with respect to the child except for past due child support obligations. I also understand that the child will be freed from all legal obligations with respect to me, and shall be, for all legal purposes, the child, legal heir, and lawful issue of the adoptive parents, entitled to all rights and privileges, including the right of inheritance, the right to take under testamentary disposition and subject to all obligations of a child of such adoptive parents as if born to such adoptive parents.
¶ 13 The court engaged in an extensive inquiry on the record with Rousseau to ensure he was entering into the stipulation knowingly, intelligently, voluntarily, and without duress. At the conclusion of the colloquy, the court found that Rousseau entered into the stipulation to terminate his parental rights "freely, knowingly, intelligently and voluntarily." The April 15 order terminating Rousseau's parental rights also states:
The court having reviewed and accepted the foregoing Stipulation and finding that the Stipulation for termination of the parental rights of John Michael [sic]Rousseau in and to [J.M.R.] was executed by him voluntarily and not under fraud or duress.

First Appeal and Motion to Vacate
¶ 14 On May 14, Rousseau filed a notice of appeal of the "Stipulation and Order on Termination of Parent-Child Relationship Regarding Father" entered on April 15. On May 27, this court scheduled a hearing on the status of the appeal because Rousseau had not filed proof of service, an order of indigency, a statement of arrangements, or a designation of clerk's papers.
¶ 15 At the hearing on July 10, Rousseau's attorney explained that Rousseau planned to file a CR60(b) motion to vacate the stipulation and order of termination to be heard by the trial court. The commissioner's ruling states that "[i]n these unusual circumstances additional time should be allowed especially to obtain a decision on the pending motion to vacate," and ordered the motion "set over... to allow appellant to pursue his pending motion to vacate in the trial court and obtain a formal ruling on his pending motion for an order of indigency."
¶ 16 On October 8, Rousseau filed the CR 60(b) motion to withdraw his stipulation and vacate the order terminating parental rights. In support, Rousseau and his attorney submitted declarations. In his declaration, Rousseau said that he was confused and did not understand the consequences of entering into the stipulation. Rousseau also states that he was coerced into signing the stipulation and discussed filing an appeal with his attorney.
I began to understand what I had done and I talked to my attorney and told him that the State did not have the right to take my son and that I did not understand that I was giving up my rights to him voluntarily. I told him that I felt coerced into signing the documents and we discussed appealing the stipulation.
The attorney states in his declaration that Rousseau should have entered into a voluntary relinquishment rather than a stipulation to terminate parental rights.
¶ 17 Following an October 21 hearing in this court on the status of the pending appeal, the commissioner ruled that "[i]n view of [counsel's] explanation, counsel shall have until November 18, 2009 to file the proof of service, an order of indigency or the filing fee, a designation of clerk's papers, and a statement of arrangements. If these steps are not accomplished by November 18, the appeal may be dismissed."
¶ 18 On November 18, the trial court heard argument on Rousseau's motion to vacate the stipulation and order terminating parental rights under CR 60(b)(3), (4), and (11).[2] Rousseau argued that his health *198 had improved over the six months since trial, that DSHS had not followed through with the open adoption agreement, and that DSHS convinced him to sign the stipulation. DSHS argued that Rousseau could not show he was entitled to withdraw his stipulation based on newly discovered evidence, misrepresentation or misconduct of DSHS, or extraordinary circumstances. DSHS pointed out that Rousseau's long-term prognosis had not changed since the time of trial, that the later dispute between Rousseau and DSHS over visitation did not establish misconduct or misrepresentation, and that Rousseau understood the consequences of entering into the stipulation.
¶ 19 The court denied the motion to vacate. The court ruled that Rousseau entered into the stipulation to terminate his parental rights knowingly, intelligently, and voluntarily. The court explained:
From the standpoint of Mr. Rousseau, when I was going through the colloquy with him, he did indicate that he was afraid to lose his parental rights and he didn't want to lose complete contact with his son. I went through the colloquy with him over and over and over again so I would be assured that he was making that decision knowingly, intelligently and voluntarily. Now, whenever he raised a question, I basically took a step back to assure myself that he understood what the issue was and that he was making his choice voluntarily.... [I]t is clear to me that at no time did Mr. Rousseau ever indicate any confusion, any coercion, any duress, any claim that somehow you provided him with improper counsel in relation to the case. It's not there.[3]
¶ 20 The written order denying Rousseau's motion to withdraw his stipulation and to vacate the order terminating his parental rights under CR 60(b) specifically states, "Based on the court's review of colloquy and State's argument the court finds that Mr. Rousseau's stipulation was knowing, intelligent, and voluntary." At the conclusion of the hearing, the trial court agreed to sign an order of indigency and waiver of the fee for appeal.
¶ 21 On December 8, this court dismissed Rousseau's appeal of the stipulation and order terminating parental rights because Rousseau did not comply with the requirements to proceed with the appeal, including filing the order of indigency.
¶ 22 On December 17, Rousseau filed a notice of appeal of the order denying his CR 60(b) motion to withdraw his stipulation and vacate the order terminating parental rights.

ANALYSIS
¶ 23 Rousseau only appeals the order denying his CR 60(b) motion to withdraw the stipulation and vacate the order terminating his parental rights. But Rousseau does not argue that the trial court abused its discretion in denying the CR 60(b) motion to withdraw and vacate the order terminating his parental rights.[4] Nor does Rousseau assign error to the finding that he entered into the stipulation knowingly, intelligently, and voluntarily.[5] Instead, for the first time on appeal, Rousseau asserts that the trial court *199 did not have the authority to accept a stipulation to terminate parental rights. Based on the statutory requirements under RCW 13.34.110(3) that are necessary in order to accept a stipulation in a dependency fact-finding, Rousseau argues the court could not accept a stipulation to terminate parental rights under former RCW 13.34.180 (2001)[6] and former RCW 13.34.190 (2000).[7]
¶ 24 RCW 13.34.110 addresses the procedure for determining whether a child is dependent. In 2001, the legislature amended RCW 13.34.110 to include requirements necessary in order to accept a parent's stipulation to an agreed order of dependency.[8] As amended, RCW 13.34.110 provides, in pertinent part:
(3)(a) The parent, guardian, or legal custodian of the child may waive his or her right to a fact-finding hearing by stipulating or agreeing to the entry of an order of dependency establishing that the child is dependent within the meaning of RCW 13.34.030. The parent, guardian, or legal custodian may also stipulate or agree to an order of disposition pursuant to RCW 13.34.130 at the same time. Any stipulated or agreed order of dependency or disposition must be signed by the parent, guardian, or legal custodian and his or her attorney, unless the parent, guardian, or legal custodian has waived his or her right to an attorney in open court, and by the petitioner and the attorney, guardian ad litem, or court-appointed special advocate for the child, if any....
(b) Entry of any stipulated or agreed order of dependency or disposition is subject to approval by the court....
(c) Prior to the entry of any stipulated or agreed order of dependency, the parent, guardian, or legal custodian of the child and his or her attorney must appear before the court and the court within available resources must inquire and establish on the record that:
(i) The parent, guardian, or legal custodian understands the terms of the order or orders he or she has signed, including his or her responsibility to participate in remedial services as provided in any disposition order;
(ii) The parent, guardian, or legal custodian understands that entry of the order starts a process that could result in the filing of a petition to terminate his or her relationship with the child within the time frames required by state and federal law if he or she fails to comply with the terms of the dependency or disposition orders or fails to substantially remedy the problems that necessitated the child's placement in out-of-home care;
(iii) The parent, guardian, or legal custodian understands that the entry of the stipulated or agreed order of dependency is an admission that the child is dependent within the meaning of RCW 13.34.030 and shall have the same legal effect as a finding by the court that the child is dependent by at least a preponderance of the evidence, and that the parent, guardian, or legal custodian shall not have the right in any subsequent proceeding for termination of parental rights or dependency guardianship pursuant to this chapter or nonparental custody pursuant to chapter 26.10 RCW to challenge or dispute the fact that the child was found to be dependent; and
(iv) The parent, guardian, or legal custodian knowingly and willingly stipulated and agreed to and signed the order or orders, without duress, and without misrepresentation or fraud by any other party.
¶ 25 It is well established that a parent has a fundamental liberty interest in the care and custody of their child. U.S. *200 CONST. amend. V, XIV; WASH. CONST. art. I, § 3; Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re Custody of Smith, 137 Wash.2d 1, 13, 969 P.2d 21 (1998). Accordingly, in order to terminate a parent-child relationship, DSHS must establish the six statutory elements set forth in former RCW 13.34.180(1) by clear, cogent, and convincing evidence.[9] If DSHS proves the six statutory elements, the court must also consider whether termination is in the best interest of the child. Former RCW 13.34.190(1)(a), (2). Whether termination is in the best interest of the child must be shown by a preponderance of the evidence. In re Dependency of A.M., 106 Wash.App. 123, 131, 22 P.3d 828 (2001).
¶ 26 Rousseau claims that without express statutory authority as provided in RCW 13.34.110 for entry of an order of dependency, the court does not have the authority to accept a stipulation to terminate parental rights under former RCW 13.34.180 and .190. We disagree.
¶ 27 Courts have the authority to accept the stipulation of a party and enter a judgment by consent. State v. Parra, 122 Wash.2d 590, 601, 859 P.2d 1231 (1993). Stipulations are favored by courts and will be enforced absent good cause is shown to the contrary. Parra, 122 Wash.2d at 601, 859 P.2d 1231; see also In re Det. of Scott, 150 Wash.App. 414, 426, 208 P.3d 1211 (2009) (affirming stipulation to civil commitment); In re Welfare of M.G., 148 Wash.App. 781, 791, 201 P.3d 354 (2009) (affirming stipulation to agreed dependency order).
¶ 28 However, because termination of parental rights implicates a fundamental liberty interest in the care and custody of their child, we hold that due process requires the court ensure that a parent's stipulation to terminate parental rights is entered into knowingly, intelligently, and voluntarily. In an analogous case, we held that because "civil commitment is a significant deprivation of liberty," due process requires that the decision to enter into a stipulation must be knowing, intelligent, and voluntary. Scott, 150 Wash.App. at 426, 208 P.3d 1211. In deciding whether the trial court abused its discretion in denying the motion to withdraw the stipulation, the court looked to criminal case law and emphasized the "strong public interest in the enforcement of plea agreements when they are voluntarily and intelligently made." Scott, 150 Wash.App. at 426, 208 P.3d 1211. In determining the stipulation is knowingly, intelligently, and voluntarily made, the court looks to the totality of the circumstances and can grant the motion to withdraw the stipulation "`whenever it appears that the withdrawal is necessary to correct a manifest injustice.'" Scott, 150 Wash.App. at 426, 208 P.3d 1211 (quoting CrR 4.2(f)). The party challenging the stipulation bears the burden of proving manifest injustice. Scott, 150 Wash.App. at 426-27, 208 P.3d 1211. Because the record established that Scott knowingly, intelligently, and voluntarily entered into the stipulation, we held that the court did not abuse its discretion in denying the motion to withdraw the stipulation and vacate the order of civil commitment. Scott, 150 Wash.App. at 427, 208 P.3d 1211.
¶ 29 Here, as in Scott, the record establishes that Rousseau knowingly, intelligently, and voluntarily entered into the stipulation to terminate his parental rights. The trial court engaged in an extensive inquiry to *201 ensure Rousseau was entering into the stipulation knowingly, intelligently, and voluntarily, and entered an explicit finding. In the order, the court explicitly finds that Rousseau entered into the stipulation knowingly, intelligently, and voluntarily, and Rousseau does not challenge the finding on appeal.
¶ 30 In addition, Rousseau cannot show prejudice. In M.G., we held that even though the court did not comply with the requirements of RCW 13.34.110, the parent could not withdraw the stipulation under CR 60(b) without showing actual prejudice to entry of an order of dependency. M.G., 148 Wash.App. at 791, 201 P.3d 354. In M.G., the court held that the failure to conduct a colloquy with the mother as required by RCW 13.34.110(3)(c) was not a reason to set aside the agreed order. In reaching that conclusion, the court pointed to the fact that the mother was represented by counsel and "appeared to be aware and engaged" in the process, and she could not show "actual prejudice." M.G., 148 Wash.App. at 791, 201 P.3d 354.
¶ 31 Likewise, here the record shows that Rousseau actively engaged in the decision to enter into the stipulation and had ample opportunity to discuss the decision with his attorney before agreeing to do so. The attorney told the court:
I went over it with my client. It was a difficult decision. I feel that he is making this decision and that he understands the decision that he's making at this time to sign the agreement and the stipulation.
¶ 32 We reject Rousseau's argument that without express statutory authority, the court could not accept a stipulation to terminate parental rights entered into knowingly, intelligently, and voluntarily, and affirm.[10]
¶ 33 Because the remainder of this opinion has no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.

Ineffective Assistance
¶ 34 In an attempt to reinstate his previously abandoned appeal, Rousseau argues the trial court violated his right to due process by refusing to sign an order of indigency, and he received ineffective assistance of counsel because his attorney failed to perfect the record in his first appeal.
¶ 35 Rousseau filed an appeal of the stipulation and agreed order terminating his parental rights on May 14, 2009. At the request of Rousseau's attorney, we granted several continuances to allow Rousseau to pursue his CR 60(b) motion to vacate the stipulation and perfect the record. The first notation ruling states:
Counsel for Mr. Rousseau appeared and explained that a motion to vacate is set for argument in the trial court on August 21, 2009. He has also filed a request for an order of indigency in the trial court but does not yet have a formal ruling on that request. It appears that this appeal involves Mr. Rousseau's challenge to the termination entered upon his stipulation approved by the trial court. In these unusual circumstances additional time should be allowed especially to obtain a decision on the pending motion to vacate.
¶ 36 At the November 18 hearing before the trial court on Rousseau's CR 60(b) motion, Rousseau's attorney told the court that the appeal was pending and he had an additional 18 days to take action on the appeal. At the conclusion of the hearing, the court agreed to sign an order of indigency.[11] On December 8, we dismissed the first appeal because Rousseau did not perfect the record. On December 17, Rousseau filed this appeal challenging the order denying his CR 60(b) motion to vacate and withdraw his stipulation to terminate his parental rights. On January 29, 2010, this court issued a mandate on the *202 first appeal. After the mandate issued, Rousseau did not file a petition for review or a motion to recall the mandate.
¶ 37 Rousseau cannot show the trial court violated his right to due process by failing to sign an order of indigency. The record shows that after the court denied Rousseau's motion to vacate the stipulation on November 18, the judge signed an order of indigency and that Rousseau had time to perfect the appeal. Instead, after the first appeal was dismissed Rousseau filed an appeal of the CR 60(b) decision. Accordingly, Rousseau cannot establish a claim for ineffective assistance of counsel for failure to perfect the record in the first appeal.
¶ 38 Rousseau had a right to effective legal representation. In re Welfare of J.M., 130 Wash.App. 912, 922, 125 P.3d 245 (2005). To establish ineffective assistance of counsel, Rousseau must show deficient performance and resulting prejudice. In re Dependency of S.M.H., 128 Wash.App. 45, 61, 115 P.3d 990 (2005). Counsel's performance is deficient if it falls "`below an objective standard of reasonableness based on consideration of all of the circumstances.'" S.M.H., 128 Wash.App. at 61, 115 P.3d 990 (quoting State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987)). There is a strong presumption of effective representation of counsel, and the defendant has the burden to show that based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. State v. McFarland, 127 Wash.2d 322, 335-36, 899 P.2d 1251 (1995). If counsel's conduct can be characterized as legitimate trial strategy, it cannot provide a basis for a claim of ineffective assistance of counsel. State v. Aho, 137 Wash.2d 736, 745, 975 P.2d 512 (1999).
¶ 39 Here, the decision to abandon the appeal of the stipulation and order terminating parental rights can be characterized as a legitimate strategic decision because appellate review of a stipulation is circumscribed. "`Relief from a stipulation may be had only in the trial court.'" Med. Consultants Nw., Inc. v. State, 89 Wash.App. 39, 44, 947 P.2d 784 (1997) (quoting State ex rel. Carroll v. Gatter, 43 Wash.2d 153, 155, 260 P.2d 360 (1953)); Baird v. Baird, 6 Wash.App. 587, 589, 494 P.2d 1387 (1972) ("Only if fraud, mistake, misunderstanding or lack of jurisdiction is shown will a judgment by consent be reviewed on appeal.").
¶ 40 We affirm.
WE CONCUR: DWYER, C.J., and ELLINGTON, J.
NOTES
[1] The court also ordered random urinalysis and parenting classes.
[2] CR 60(b)(3) authorizes a court to vacate a judgment on the basis of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b). Go2Net, Inc. v. C I Host, Inc., 115 Wash.App. 73, 88, 60 P.3d 1245 (2003). CR 60(b)(4) provides for relief from a judgment if fraud, misrepresentation or other misconduct by an adverse party prevented the moving party from "fully and fairly presenting its case or defense." Lindgren v. Lindgren, 58 Wash.App. 588, 596, 794 P.2d 526 (1990). CR 60(b)(11) is confined to extraordinary circumstances that are substantial deviations from a prescribed rule. In re Marriage of Furrow, 115 Wash.App. 661, 673-74, 63 P.3d 821 (2003).
[3] The court also disagreed that Rousseau's counsel provided ineffective assistance. The court stated:

It's clear that you feel bad in relation to what the result was in this case and you're partially blaming yourself, which, frankly, I think that a blame on yourself is misguided. I don't think that you did anything inappropriate in this case.
[4] We review a court's decision under CR 60(b) for abuse of discretion. In re Marriage of Tang, 57 Wash.App. 648, 653, 789 P.2d 118 (1990). We will not overturn the decision unless the trial court exercised its discretion on untenable grounds or for untenable reasons. Tang, 57 Wash.App. at 653, 789 P.2d 118. An appeal from the denial of a CR 60(b) motion is not a substitute for an appeal and is limited to the propriety of the denial, not the impropriety of the underlying order. Bjurstrom v. Campbell, 27 Wash.App. 449, 450-51, 618 P.2d 533 (1980).
[5] Unchallenged findings of fact are considered verities on appeal. In re Dependency of C.M., 118 Wash.App. 643, 649, 78 P.3d 191 (2003); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992).
[6] The legislature amended RCW 13.34.180 twice in 2009, each without reference to the other. LAWS OF 2009, chapter 477, section 5 inserted subsection (1)(e)(iii). LAWS OF 2009, chapter 520, section 34 inserted a reference to the supervising agency to subsection (1).
[7] The legislature amended RCW 13.34.190 in 2010 by adding a new subsection and renumbering the statute. LAWS OF 2010, ch. 288, § 2.
[8] The Senate "Final Bill Report" states that the changes to RCW 13.34.110 were made because "[d]ue process requirements must be met when entering stipulated or agreed orders of dependency." FINAL B. REP. on Engrossed Substitute S.B. 5413, 57th Leg., Reg. Sess. (Wash.2001).
[9] Under former RCW 13.34.180(1), DSHS must establish:

(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future....; and
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.
[10] Nonetheless, to ensure compliance with due process, the legislature should amend former RCW 13.34.180 to specifically address the due process requirements for accepting a stipulation to terminate parental rights.
[11] The court stated:

I know you have consistently requested me to sign documents in relation to waiving the fee for appeal previously. There were, from my perspective, no issues to appeal. Now there is. So if you want to present those documents, I'll sign a waiver in relation to costs related to appeal.