IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Welfare of D.M.R., DOB: 10/02/14, M.R. DOB: 10/02/14, and U.C.R., DOB: 11/28/13, | No. 79206-7-I (Consolidated with No. 79207-5 and No. 79208-3) |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| CLEVE ALLEN GOHEEN-RENGO, | |
| Appellant. | FILED: September 23, 2019 |

CHUN, J. — Goheen-Rengo appeals the denial of his motion for a new parental rights termination trial. The State argues that Goheen-Rengo did not timely file his motion and that the motion fails on the merits. Assuming without deciding the motion was timely, we conclude it lacks merit and affirm.

I.
BACKGROUND

In 2017, a Whatcom County Superior Court judge held a trial considering the termination of Goheen-Rengo's parental rights. In preparation for the trial, the trial judge reviewed Goheen-Rengo's dependency case. In doing so, she noted that, in prior hearings, the judicial officer had two deputies present because of safety concerns with Goheen-Rengo. The trial judge consulted with an

undersheriff to develop a security plan, and based on their recommendation, planned to have two deputies in the courtroom at all times.

At trial, Goheen-Rengo made a number of threatening statements. Referring to the social workers, attorneys, and others in the courtroom, Goheen-Rengo said that "[they] should all be in a box in the desert." In his testimony, he admitted that he tried bring knives into the courthouse during trial. He told the people present that "[they] should all be afraid of me," and mentioned that he owned a gun and regularly practiced marksmanship. The day before the ruling to terminate his parental rights, as the trial judge exited the court clerk's office, Goheen-Rengo stood outside and stared at her. Goheen-Rengo said nothing to the judge, but she had to "brush past him" to get around him.

On March 15, 2017, the court terminated Goheen-Rengo's parental rights.[1] On June 6, 2017, Goheen-Rengo posted a photo on Facebook of himself holding a gun, captioned, "Return the Rengo Children NOW! Or Else." After seeing the post, the termination trial judge became concerned. The Whatcom County Prosecutor charged Goheen-Rengo with intimidating a judge shortly thereafter. The affidavit of probable cause for the charge noted that the termination trial judge purchased a firearm for personal protection and took classes on how to use it out of concern from Goheen-Rengo's behavior at trial.

---

[1] Goheen-Rengo appealed this decision, which we affirmed on March 5, 2018. In re Dependency of D.M.R., No. 76721-6-I (Wash. Ct. App. Mar. 5, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/767216.pdf. The Washington State Supreme Court denied Goheen-Rengo's subsequent motion for discretionary review on August 8, 2018, cause no. 95684-7.

On October 23, 2017, Goheen-Rengo's criminal defense attorney interviewed the termination trial judge. During the interview, the judge said that she took a firearms use course during trial, received a concealed carry permit around the time of her ruling, and purchased a gun two or three weeks after the ruling. The judge also said she held strong anti-gun views until February 2017, but that changed because of Goheen-Rengo's behavior at trial and her general awareness that Goheen-Rengo had showed up at his foster children's new homes, and on another instance had rifled through the trash of one of the children's guardian ad litem. For the same reasons, the judge also purchased a home security system during trial.

After learning of the foregoing interview, on April 24, 2018, Goheen-Rengo's counsel from the termination trial filed a motion for a new trial under CR 60(b)(3) and (11). A Skagit County Superior Court commissioner heard the motion as a Whatcom County matter and denied it as untimely and on its merits. Goheen-Rengo moved for revision of commissioner's ruling. A Skagit County Superior Court judge denied the motion, stating as follows:

[1]. The Motion for New Trial was untimely.

[2]. [Goheen-Rengo] failed to establish that the trial judge was biased or that any evidence alleged to be newly discovered would have changed the outcome of the proceedings.

Goheen-Rengo appeals.

II.
ANALYSIS

Goheen-Rengo argues the Skagit County Superior Court judge erred in denying his motion for a new trial under CR 60(b)(3) and CR 60(b)(11). The

3

State requests we affirm on the basis that the motion was untimely and unfounded on the merits. Assuming without deciding that Goheen-Rengo timely filed his CR 60(b) motion, it fails on the merits.

We review a court's decision under CR 60(b) for abuse of discretion. In re Dependency of J.M.R., 160 Wn. App. 929, 938 n.4, 249 P.3d 193 (2011). We will respect the trial court's decision unless it exercised its discretion on untenable grounds or untenable reasons. J.M.R., 160 Wn. App. at 938 n.4.

A. CR 60(b)(11)

Goheen-Rengo moved for a new trial under CR 60(b)(11). The State argues his motion under 60(b)(11) lacks merit because he received due process and the termination trial judge was not actually or potentially biased against him. We agree with the State.

A trial court may grant a new trial under CR 60(b)(11) for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11). Specifically, Goheen-Rengo advances two theories to support his CR 60(b)(11) motion: (1) the trial court proceedings had an objectively impermissible risk of bias in violation of the Due Process Clause of the United States Constitution's 14th Amendment, and (2) the termination trial judge had actual or potential bias against him in a way that violated Washington's appearance of fairness doctrine.

1. Due Process

Due process requires a fair trial in a fair tribunal. In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). But most issues of judicial disqualification do not rise to a constitutional level. Caperton v. A.T. Massey

4

Coal Co., 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (citing Fed. Trade Comm'n v. Cement Institute, 333 U.S. 683, 702, 68 S. Ct. 793, 92, L. Ed. 1010 (1948)). Because the states' codes of judicial conduct may provide more protection than due process requires, courts resolve most disputes over disqualification without resort to the Constitution; only rarely will due process mandate disqualification. Caperton, 556 U.S. at 889-890. When examining whether due process mandates disqualification, a court conducts an objective inquiry, asking not "whether the judge is actually, subjectively biased, but whether the average judge in [their] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Caperton, 556 U.S. at 881.

Only in four factual categories has the United States Supreme Court found an unconstitutional potential for bias in violation of the Due Process Clause: first, where a judge has a direct, personal, substantial, pecuniary interest in a case, (Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749 (1927)); second, where a judge oversees a criminal contempt proceeding and "previously served as a grand juror in the same case, or where the party charged with contempt has conducted an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification," (Williams v. Pennsylvania, 136 S. Ct. 1899, 1912, 195 L. Ed. 2d 132 (Roberts, C.J., dissenting on other grounds) (2016) (internal quotation marks omitted) (citing Mayberry v. Pennsylvania, 400 U.S. 455, 466, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)); third, where an individual with a stake in a case had a significant and disproportionate role in placing a judge on the case through the campaign process, (Caperton, 556 U.S. at 884);

5

and fourth, where a judge has had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case, (Williams, 136 S. Ct. at 1899).

The facts advanced by Goheen-Rengo hardly compare to these "extreme" and "extraordinary" scenarios that the United States Supreme Court has judged violate due process. See Caperton, 556 U.S. at 887-888. The Court has purposefully narrowed the doctrine of disqualification on the basis of the Due Process Clause; and it has explicitly recognized that the states, through their codes of judicial conduct, police judicial integrity and may "adopt recusal standards more rigorous than due process requires." Caperton, 556 U.S. at 887-890 (accord with Tatham v. Rogers, 170 Wn. App. 76, 92, 283 P.3d 583 (2012)). Goheen-Rengo's assertions of judicial bias do not rise to the level of a denial of due process.

2. Appearance of Fairness

A violation of Washington's appearance of fairness doctrine can justify vacation of judgment under CR 60(b)(11). Tatham, 170 Wn. App. at 81. Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent person would conclude that all parties obtained a fair, impartial, and neutral hearing. State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017) (citing State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010)). "The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias." Solis-Diaz, 187 Wn.2d at 540. "Because the trial court is presumed to perform its functions regularly and

6

properly without bias or prejudice, a party asserting a violation of the appearance of fairness doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker; mere speculation is not enough." Tatham, 170 Wn. App. at 96 (internal quotation marks and citation omitted).

A judge's failure to recuse when required to do so by the judicial canons also violates the appearance of fairness doctrine. Tatham, 170 Wn. App. at 94. Rule 2.11(A) of the Code of Judicial Conduct requires that a judge recuse in any proceeding in which the judge's impartiality might reasonably be questioned.

Goheen-Rengo asserts that the termination trial judge had actual or potential bias towards him and that she should have recused herself from the proceedings. In support of his argument of actual or potential bias, he alleges that the termination trial judge "admitted in her [interview] that her fear of [Goheen-Rengo] affected the way she listened to the testimony at trial," and "filtered the testimony through the lens of her own personal risk assessment." But these propositions are unsupported by the portions of the interview he cites. Instead of addressing her perception of his testimony, the termination trial judge spoke about the courtroom and home security measures she took as a result of his threats and pattern of showing up at the homes of other parties relevant to his children's foster care. In the other portion cited by Goheen-Rengo, the trial judge discussed her perception of the *threat* posed by Goheen-Rengo, but did not say that the threat posed by him changed her perception of his testimony. These portions of her interview do not support a finding of actual or potential bias.

7

Relieving Goheen-Rengo of the termination judgment would allow him to benefit from his own threats. In State v. Bilal, 77 Wn. App. 720, 725, 893 P.2d 674 (1995), the court ruled that the trial court did not err in denying a recusal motion filed by a criminal defendant after the defendant assaulted the judge in open court between the verdict and sentencing. Since this was a matter of first impression in Washington, the court surveyed cases from across other jurisdictions and found no instances of a defendant securing recusal because of their threats to the court. Bilal, 77 Wn. App. at 724. In deciding that the trial court properly denied the recusal motion and finding no violation of the appearance of fairness doctrine, the court reasoned that a defendant should not benefit from his own threats or use of force against the court. Bilal, 77 Wn. App. at 725.

Goheen-Rengo falls short of showing actual or potential bias, or that the termination trial judge's impartiality might reasonably be questioned. Besides making unsupported claims that the termination trial judge "filtered the testimony through the lens of her own personal risk assessment," Goheen-Rengo makes no showing that his behavior caused the judge to change her demeanor towards him during trial. Goheen-Rengo's accusations of bias amount only to mere speculation. These accusations do not show actual or potential bias, and by extension a violation of the appearance of fairness doctrine under Tatham. See Tatham, 170 Wn. App. at 96.

Finally, Goheen-Rengo argues that by requiring a showing of "actual bias," the court reviewing his CR 60(b) motion applied the wrong legal standard

8

constituting a per se abuse of discretion under State v. Quismundo, 164 Wn.2d 499, 504, 192 P.3d 342 (2008). He asserts that the court should have reviewed instead for actual or potential bias. But even if the Skagit County Superior Court judge reviewed only for actual bias, as discussed above, the record does not support a finding of potential bias. See State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (even if a trial court abuses its discretion, an appellate court may affirm on any ground within the pleadings and proof).

B. CR 60(b)(3)

A trial court may grant a motion for a new trial under CR 60(b)(3) where there is "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)." CR 60(b)(3). A moving party justifies vacating a judgment on the grounds of newly discovered evidence when they establish that the evidence: "(1) would probably change the result if a new trial were granted, (2) was discovered since trial, (3) could not have been discovered before the trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). A failure to show any one of these five factors will justify denial of the CR 60(b)(3) motion. State v. Swan, 114 Wn.2d 613, 642, 790 P.2d 610 (1990).

Here, Goheen-Rengo fails to show any new evidence that would probably change the result of his parental rights termination proceeding. Goheen-Rengo argues that the newly discovered evidence from the interview shows an unconstitutional risk of bias on behalf of the termination trial judge, mandating a

9

new trial. But as discussed above, there was no unconstitutional risk that the termination trial judge had a bias against Goheen-Rengo. Nor did the termination trial judge have actual or potential bias in violation of the appearance of fairness doctrine. As such, Goheen-Rengo has made no showing that the evidence from the interview would have changed the outcome of his trial. Because Goheen-Rengo does not satisfy this factor, the Skagit County Superior Court judge justifiably denied his CR 60(b)(3) motion.

The Skagit County Superior Court judge acted within his discretion in rejecting the merits of Goheen-Rengo's CR 60(b) motion.

Affirmed.

_Chun, J._

WE CONCUR:

_Andrus, J._                    _Leach, J._

10