# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

<table>
<tr><td>

In the Matter of the Dependency of:

K.R.T.W. (DOB: 02/17/2011),

                Minor Child,

BILLY ANDERSON,

                Appellant,

      v.

STATE OF WASHINGTON,
DEPARTMENT OF CHILDREN,
YOUTH, AND FAMILIES,

                Respondent,

</td><td>

No. 80381-6-I

DIVISION ONE

UNPUBLISHED OPINION

</td></tr>
</table>

LEACH, J. — Billy Anderson appeals an order terminating his parental rights. He argues the Department of Children, Youth, and Families (Department)[1] failed to offer him mental health services with a therapist certified in motivational interviewing. The record shows no such service was recommended. We affirm.

## FACTS

Billy Anderson is the father of K.R.T.W., a special needs child born in 2011. Anderson has never had custody of or parented K.R.T.W. without supervision. In

---

[1] In July 2018, the Department of Social and Health Services transferred child welfare responsibilities to the Department of Children, Youth, and Families. We refer to both as the Department.

Citations and pin cites are based on the Westlaw online version of the cited material.

February 2016, the Department filed agreed dependency and disposition orders for K.R.T.W. Over the course of the dependency, the Department offered Anderson numerous services designed to help remedy his parental deficiencies.[2]

In February 2018, Anderson began participating in a neuropsychological evaluation with Dr. Tatyana Shepel. In her July 2018 report, Dr. Shepel concluded that Anderson's "chronicity and severity of impairments in daily functioning," "sever cognitive and functional limitations," and "lack of insight and defensiveness might not result in quick improvement in his functioning significant enough to trust him with parenting a child independently." "[H]is prognosis in becoming a safe and fit parent for [K.R.T.W.] is guarded to poor." Among the tailored services she recommended to help improve Anderson's capacity to care for K.R.T.W., Dr. Shepel said:

> Mr. Anderson will benefit from attending individual mental health therapy to address his paranoid ideation, low frustration tolerance, poor impulse control, and impairment in interpersonal relationships. It is important for his future therapist to understand Mr. Anderson's external locus of control, victim's mentality, and his defensiveness. Mr. Anderson will benefit from an application of motivational interviewing to engage him in treatment in a non-confrontational manner. However, there is a high risk for premature termination due to Mr. Anderson's non-compliance and avoidant behaviors, which he ha [sic] been demonstrating consistently over a number of years.

Subsequently, the trial court ordered Anderson to follow the recommendation in Dr. Shepel's evaluation.

Department Social Worker Renee Boyd assisted Anderson in setting up mental health counseling by providing him with directions on how to call the central resource line 211, and she provided Anderson with what to say. Anderson completed a mental health assessment and initiated mental health counseling with "Juana" at SeaMar Community

---

[2] There is no dispute that Anderson completed many of these services.

Health Center. Boyd asked Anderson at "least three" times to sign a consent or release of information to permit information sharing between Juana and the Department but Anderson did not do so. Boyd also attempted to contact Juana directly but her efforts were unsuccessful. So, the Department was unable to provide Dr. Shepel's evaluation to Juana.

The termination trial took place in June 2019. Dr. Shepel testified, "I was hoping that the Department will assist in finding a culturally educated mental health counselor who would understand the issues and have motivational interviewing."[3] When asked what type of providers offer that service, Dr. Shepel answered: "Typically, mental health counselors, some of them elect to take motivational interviewing courses and become certified. So, it will be important to look for someone who has this type of certification."

During closing, Anderson argued that motivational interviewing was a recommended service and that "[t]here was no specific referral for mental health treatment that included motivational interviewing."

The trial court granted the Department's termination request. In its order terminating Anderson's parental rights, the court made the following pertinent contested findings of fact:

> 2.126 All court-ordered and necessary services capable of correcting parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.

> 2.149 Services ordered under RCW 13.34.136 have been expressly and understandably offered or provided, and all necessary services

---

[3] According to Dr. Shepel, "motivational interviewing" is a "specific technique developed for resistant clients, some in forensic situations, court-ordered services, mostly developed for drug and alcohol addicts who think that there is nothing wrong with their substance use and alcohol use." Furthermore, "[i]t is a specific technique that starts with finding goals, positive goals, and positive changes in a client's life."

reasonably available, capable of correcting the father's parental deficiencies within the foreseeable future, have been expressly and understandably offered or provided to the father.

2.152 The Department has shown the predicate condition regarding necessary services by clear, cogent, and convincing evidence.

Though not included in its written order, the trial court stated in its oral ruling that "all services have been provided, offered and provided; I don't think that an intensive hands-on counseling that was spoken about a couple different times by Dr. Shepel is necessary," and "I don't think the evidence shows that they are necessary."

Anderson appeals.

## STANDARD OF REVIEW

To terminate parental rights, the Department must first prove the six elements set forth in RCW 13.34.180 by clear, cogent, and convincing evidence.[4] If the Department meets this burden, the trial court must then find by a preponderance of the evidence that termination is in the child's best interests.[5]

If substantial evidence[6] supports the trial court's findings, we must affirm the termination order.[7] On review, we do not make credibility determinations or reweigh the evidence.[8] We accept unchallenged findings of fact as true on appeal.[9] Whether a

---

[4] RCW 13.34.190(1)(a)(i); In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

[5] RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

[6] Substantial evidence is sufficient to persuade a fair-minded, rational person of the truth of the declared premise; In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

[7] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[8] In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

[9] In re Dependency of J.M.R., 160 Wn. App. 929, 939, 249 P.3d 193 (2011).

termination order satisfies statutory requirements is a question of law we review de novo.[10]

ANALYSIS

Anderson makes one argument. He claims the Department failed to meet its burden under RCW 13.34.180(1)(d) "to establish by clear, cogent, and convincing evidence that it expressly and understandably offered or provided all court-ordered services." "Through its order to follow all recommendations in the neuropsychological report," Anderson contends, the trial court "ordered [him to] participate in mental health counseling with a provider who was certified in 'motivational interviewing' techniques." This argument fails for several reasons.

First, the record demonstrates that Dr. Shepel's report did not recommend that Anderson receive mental health therapy from a provider certified in motivational interviewing. Though she testified about needing to look for a therapist "who has this type of certification," Dr. Shepel's report did not call for a therapist certified in such technique. Rather, her recommendation merely states that Anderson would benefit from an application of that technique.

Second, the record shows the trial court did not include counseling with a therapist certified in motivational interviewing as a service ordered under RCW 13.34.136 in any of its permanency planning orders.

Finally, even if we agreed the Department failed to provide motivational interviewing services to Anderson, termination is still appropriate here. "Where the record establishes that the offer of services would be futile, the trial court can make a finding that

---

[10] In re Dependency of K.N.J., 171 Wn.2d 568, 574, 257 P.3d 522 (2011).

the Department has offered all reasonable services."[11]   Here, the trial court determined Anderson's parental deficiencies could not be remedied in the foreseeable future and entered the following uncontested findings:

> 2.86   Even if the Department should have made more effort to tailor services to the father's needs, that would not generate an ability to parent this special needs child.
>
> 2.117  Mr. Anderson has no ability to parent a special needs child.
>
> 2.119  Mr. Anderson would need a full-time support person to assist him in parenting [K.R.T.W]. Mr. Anderson does not have such a support person in his life. That type of support is not available through the Department or in the community.
>
> 2.156  Even if the father were to engage in services and achieve the best possible progress, it would take two years to return [K.R.T.W.] home.
>
> 2.157  Dr. Tatyana Shepel offered a prognosis of "guarded to poor" based on her 2018 assessment of Mr. Anderson.
>
> 2.158  The near future for a child [K.R.T.W.'s] age is approximately six months.

These findings establish that motivational interviewing with a therapist certified in that technique would have been futile.

## CONCLUSION

For the reasons stated above, and because Anderson does not otherwise challenge the Department's proof in establishing the remaining statutory termination

---

[11] Matter of K.M.M., 186 Wn.2d 466, 483, 379 P.3d 75 (2016).

factors, we affirm the termination of Anderson's parental rights to K.R.T.W.[12]

_Leach, J._

WE CONCUR:

_Dwyer, J._          _Appelwick, J._

---

[12] Anderson's remaining challenges to the trial court's findings of fact fail because they rest on the erroneous premise that all ordered services were not provided.