IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Custody of: M.H. and B.H.-W.,<br><br>Children,<br><br>CATHERINE HOM and THOMAS HOM,<br><br>Respondents,<br><br>v.<br><br>KRISTEN WEST and ADAM HOM,<br><br>Appellants. | No. 81399-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Adam Hom appeals a decree awarding nonparental custody of his minor children to Catherine and Thomas Hom. Adam[1] primarily argues clear, cogent and convincing evidence does not support the trial court's determination that placing the children with him would cause actual detriment to their growth and development. He fails, however, to provide us with a report of proceedings that reflects the witnesses' testimony at trial. Because we lack a sufficient record to review Adam's claimed errors or to grant the relief he seeks, we affirm the trial court's decision.

---

[1] Because the parties share the same last name, we refer to the Homs by their first names for clarity. We intend no disrespect. Kristen West is not a party on appeal and her custodial rights are not at issue.

Citations and pin cites are based on the Westlaw online version of the cited material.

## FACTS

Though our review is hampered by an inadequate record, we discern the following facts from the scant pleadings Adam has provided.[2]  Adam and Kristen are parents of two minor children, M.H. and B.H.-W.  Catherine and Thomas are the children's aunt and uncle, respectively.

On June 4, 2018, Catherine and Thomas filed a petition for nonparental custody of M.H. (then age ten) and B.H.-W. (then age seven), alleging that neither Kristen nor Adam was a suitable custodian.  The petition asserted the children would suffer actual detriment to their growth and development if they lived with either parent because the:

> Parents Have been evicted 6-25-18, no home to go to.  Took mattress, Tent, 2 suitcases & a propane grill.  Both Parents are Active drug uses & active Drug Dealers.  Father is a Registered Sex offender, mother is Bipolar & not taking meds because the sell them.  Living conditions I have produced photos, the little girls mattress was on floor w/ live Rats living in it.  Children are constantly verbally & physically abused & scared that now Homeless.

(Errors in original).  If the children were in their custody, Catherine and Thomas said, M.H. and B.H.-W. "will not be abused or neglected."

On August 17, 2018, the court approved an order on adequate cause for nonparental custody and gave temporary custody of the children to Catherine and Thomas.

---

[2] Adam also provides us with 17 of the 26 exhibits admitted at trial.  We decline to consider those documents because, without the report of proceedings, it is impossible to determine what the trial court said in admitting the exhibits, for what purposes the court admitted them, or the weight the court gave them, if any.

On December 21, 2018, Adam filed his response to the petition, asserting that "All Allegations are false & lies, total B.S." and "petitioners reasons are false and nothing but more lies." (Errors in original).

The two-day bench trial on the petition began on July 9, 2019. Nine witnesses testified at trial. On July 10th, the trial court entered a final nonparental custody order placing the children with Catherine and Thomas. It made accompanying findings of fact that Kristen was unfit, and the following pertinent ones concerning Adam:

> Adam: At the time of removal this respondent had demonstrated neglect by not providing adequate living circumstances (filth, rodent infestation, inadequate sanitation, Inadequate medical care for the children.) There was credible testimony as to verbal and emotional abuse of the children. Failure to protect from emotional and physical abuse by other relatives. Adam may be a fit parent however the girls will suffer actual harm to their development if returned to Adam.
> General Factual [F]indings:
> 1. Parents' residence on Wiggens was rat-infested, filthy and unfit for human habitation and the Respondents [Kristen and Adam] failed to remediate or change the conditions.
> 2. Respondents engaged in verbal and emotional abuse of the children calling them bitch, lard-ass, dumb, dumb-ass.
> 3. Respondents failed to protect the children from similar name-calling and verbal abuse and physical abuse (striking or "popping" the children on the back of the head) by the grandmother.
> 4. [M.H.] was severely overweight from improper nutrition.
> 5. Both [children] suffered breathing issues which are either attributable to or exacerbated by the living conditions with the parents.
> 6. The issues in Finding 4 and 5 have significantly improved or resolved with the [children] out of the care of the parents.

The court also found it in the children's best interests to live with Catherine and Thomas because "[r]eturning the children to either parent will result in actual detriment to the children. Neither parent has demonstrated the ability to

adequately parent or protect the children. Kristen West has demonstrated abandonment of the children." The court then entered an order granting Adam scheduled visitation of the children.

Adam appeals.

ANALYSIS

Adam raises three issues for our review. Before reaching his primary claim that insufficient findings support the trial court's "actual detriment" conclusion, we first address his claim that the court entered an erroneous finding and used the wrong legal standard in awarding custody to Catherine and Thomas.

Standard of Review

We review a trial court's nonparental custody determination for an abuse of discretion. In re Custody of Stell, 56 Wn. App. 356, 366, 783 P.2d 615 (1989); In re Custody of L.M.S., 187 Wn.2d 567, 574, 387 P.3d 707 (2017). A court "abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Given the trial court's "unique opportunity to personally observe the parties," we will disturb a custody determination only when both the court's written and oral rulings demonstrate a failure to consider statutory requirements. In re Marriage of Murray, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). On review, we do not reweigh the evidence or the trial court's credibility determinations. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

<u>Erroneous Finding</u>

Adam contends the trial court erred in finding that he has not "demonstrated the ability to adequately parent or protect the children."  But Adam failed to provide us with a report of the trial proceedings.  He also designated only a smattering of the pleadings and exhibits that comprise the trial court record.  The record before us does not indicate what the parties argued below.

Adam, as the appellant, bears the burden of perfecting the record so the reviewing court has before it all relevant material to decide the issues presented.  <u>In re Marriage of Haugh</u>, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990); RAP 9.2(b) ("A party should arrange for the transcription of all those portions of the verbatim report of proceedings necessary to present the issues raised on review.").  Absent a record of the testimony of numerous trial witnesses, we can only speculate whether "substantial evidence"[3] supports the trial court's findings.  When the appellate record does not contain a report of proceedings, the trial court's findings are accepted as verities.  <u>Rekhi v. Olason</u>, 28 Wn. App. 751, 753, 626 P.2d 513 (1981).  Thus, we accept these challenged, as well as the court's other unchallenged, findings as true.[4]  The court neither abused its discretion nor erred.

<u>The Proper Legal Standard</u>

Adam claims the trial court incorrectly applied the "best interest of the child" standard to make its custody determination.  What standard the trial court applied

---

[3] Substantial evidence is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.  <u>In re Welfare of T.B.</u>, 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

[4] In his briefing, Adam clarifies that he is challenging only one finding of fact and not any of "the others."  We accept unchallenged findings of fact as true on appeal.  <u>In re Dependency of J.M.R.</u>, 160 Wn. App. 929, 939, 249 P.3d 193 (2011).

and whether that standard was legally correct are both questions of law that we review de novo. Hundtofte v. Encarnacion, 181 Wn.2d 1, 13, 330 P.3d 168 (2014) (citing Dreiling v. Jain, 151 Wn.2d 900, 908, 93 P.3d 861 (2004)).

RCW 26.10.030(1) provides that a party may file a nonparental custody petition "if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." The court must make a threshold determination that the petition and supporting affidavits establish adequate cause for a hearing. RCW 26.10.032. Adam does not dispute the trial court's adequate cause determination made in this case.

Once the initial threshold is met, "[t]he court shall determine custody in accordance with the best interests of the child." RCW 26.10.100. "But it is well settled that 'best interest of the child' is a constitutionally insufficient basis on which to deprive a parent of parental rights." In re Custody of Z.C., 191 Wn. App. 674, 692, 366 P.3d 439 (2015) (citing In re Custody of Smith, 137 Wn.2d 1, 20, 969 P.2d 21 (1998)). In order to protect a parent's constitutional right, a nonparent seeking custody must establish, by clear, cogent, and convincing evidence that "the parent is unfit or [] placement with an otherwise fit parent would cause actual detriment to the child's growth and development." In re Custody of Shields, 157 Wn.2d 126, 150, 136 P.3d 117 (2006); In re Custody of C.C.M., 149 Wn. App. 184, 202-05, 202 P.3d 971 (2009). This is a heightened standard that will typically be met only in " 'extraordinary circumstances.' " In re Custody of B.M.H., 179 Wn.2d 224, 236, 315 P.3d 470 (2013) (quoting In re Marriage of Allen, 28 Wn. App. 637, 649, 626 P.2d 16 (1981)).

Here, in its oral ruling,[5] the trial court acknowledged the heightened legal standard applicable to nonparental custody actions, and explained:

> So what we have is, statutory provisions indicate for a non-parental custody action which is contested, that it is the petitioner's burden by clear, cogent, and convincing evidence. And as I stated at the very beginning of this trial, normal civil cases are a preponderance of the evidence, 50 percent plus 1 is a simple way to explain it. And it's somewhat less than the beyond a reasonable doubt burden in a criminal case. But it's much closer to that than it is to the preponderance of the evidence.
>
> The statutes require a couple of things, either that the parent is unfit or unsuitable – and that is not a defined term. The closest that we get is reference back to the dependency statutes for fitness.
>
> . . . .
>
> The next part of the statutory scheme indicates that even if a parent is fit, the Court has the authority not to return the children to them if returning the child or children would result in actual harm or actual detriment to the child. <u>And that's a high burden.</u>
>
> It is more than just saying that where the child currently is, it is better for the child to be there because it has more opportunities or things of that nature. <u>It is something more than</u> what we use in dependency land, which is <u>the best interests of the child. It is more than that. It requires more than that. We have to have a showing of actual harm to the child if the child would be returned to that parent.</u>

(Emphasis added).

Based on our review of the limited record available, we conclude that the trial court applied the proper legal standard to determine the children's placement. There was no error.

---

[5] We "may consider a trial court's oral decision so long as it is not inconsistent with the trial court's written findings and conclusions." <u>State v. Kull</u>, 155 Wn.2d 80, 88, 118 P.3d 307 (2005) (citing <u>State v. Bryant</u>, 78 Wn. App. 805, 812-13, 901 P.2d 1046 (1995)). We see no inconsistency in the trial court's understanding of the applicable legal standard.

<u>"Actual Detriment" Determination</u>

Adam mainly argues the trial court's findings of fact do not support its legal conclusion that placing the children in his care would detrimentally affect their growth and development.[6]  Whether placement of a child will result in actual detriment to his or her growth and development is a highly fact-specific inquiry, and exactly when actual detriment outweighs parental rights is determined on a case-by-case basis.  <u>Shields</u>, 157 Wn.2d at 143 (quoting <u>Allen</u>, 28 Wn. App. at 649).

We review de novo whether a trial court's findings of fact support its conclusions of law.  <u>In re Custody of A.F.J.</u>, 179 Wn.2d 179, 184, 314 P.3d 373 (2013).  Our first step, which we have just completed, requires us to determine if the trial court "applied the correct legal standard to the facts under consideration." <u>Rasmussen v. Bendotti</u>, 107 Wn. App. 947, 954, 29 P.3d 56 (2001) (citing <u>State v. Williams</u>, 96 Wn.2d 215, 220, 634 P.2d 868 (1981)).

Next, because "[e]very conclusion of law . . . necessarily incorporates the factual determinations made by the court in arriving at the legal conclusion (or ultimate fact)," <u>Id.</u> (citing <u>Universal Minerals, Inc. v. C.A. Hughes & Co.</u>, 669 F.2d 98, 101-02 (3d Cir. 1981)), we examine the factual findings <u>in light of the evidence from which they arose</u> and analyze them in comparison with similar case law or authorities.  Here, however, we can go no further than simply identifying the trial court's findings because our review is hindered by a lack of report of proceedings.

---

[6] Because the trial court found Adam was a fit parent, we need not address that issue.

For instance, in amplifying its written findings, the trial court noted at its oral ruling how returning the children to Adam's care would detrimentally affect them:

> Adam . . . [t]he question then falls to the next stage, which is, will the children suffer actual detriment or actual harm if I return the children to you.
>
> . . . .
>
> But the condition of that apartment was obviously dangerous to the children.
>
> . . . .
>
> Now, that is exacerbated by the fact that both [children] had breathing issues. And I didn't hear anything about any efforts that you or Kristen made to address those breathing issues, other than you talked about the nebulizers, and you talked about the inhalers. And that is a step. And I do recognize that. But in looking at the depth of the issues that the [children] had, it was probably inadequate.
>
> . . . .
>
> [T]he [children] self-reported to the physician that type of physical striking around the ears. And that was consistent with [Catherine's] testimony, as well. And so I think that that has happened . . . And I think, Adam, from my questions for you when you were testifying, I think you probably read into my concerns about your ability to protect from those types of activities happening . . . My questions – I don't believe that you are in a place right now where you can.
>
> . . . .
>
> I am not making a finding that you are an unfit parent; however, the [children] will suffer actual harm to their development if returned to Adam at this time.

(Emphasis added).

Additionally, because Adam was residing with his mother (the children's grandmother) at the time of trial, and due to his mother's abuse of the children, the trial court ruled that Adam could not use his "mom for daycare" or "babysitting."

While we recognize Adam's dispute regarding the sufficiency of the trial court's actual detriment findings, there is no debate that the court indeed made them. And though Adam points to numerous nonparental custody cases to distinguish this case from the ones in which a grant of the petition was upheld and analogizes to the ones in which the petition was reversed, we cannot engage in analysis absent a report of proceedings. We would be doing nothing other than speculating.

In sum, on this limited record, we conclude that the trial court applied the correct legal standard and made findings of actual detriment. Without a report of proceeding, however, we lack the ability to say whether the court's findings are insufficient as a matter of law and decline to overturn the trial court's custody determination.

We affirm.[7]

Andrus, A.C.J.

WE CONCUR:

Dwyer, J.          Mann, C.J.

---

[7] Catherine and Thomas request that the parenting plan be amended or modified to correct inaccuracies and lower the amount of Adam's visitation with the children. Because they did not cross-appeal, we decline to grant Catherine and Thomas's request for affirmative relief in accordance with RAP 2.4(a).