# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parentage of MLM, | No. 55867-0-II |
| A minor child, | |
| RY LUKE MALLOY, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| CYNTHIA JACKSON, | |
| Appellant. | |

GLASGOW, C.J.—Cynthia Jackson and Ry Luke Malloy dated briefly. Their son MLM was born in January 2018. After learning that he was MLM's father, Malloy pursued a parenting plan. Throughout the proceedings, Jackson resisted Malloy's attempts to visit MLM and contacted law enforcement and child welfare agencies multiple times to allege that Malloy was abusing MLM. After a bench trial, the superior court granted Malloy sole custody of MLM, limited Jackson's parenting time under RCW 26.09.191, ordered her to pay child support, and issued a restraining order protecting Malloy and MLM. The superior court provided that Jackson could obtain a modification increasing her visitation with MLM after a mental health evaluation and parenting class.

Jackson moved to modify the parenting plan even though she had not met the superior court's requirements. A court commissioner found no adequate cause to modify the parenting plan. Jackson moved to revise the order denying adequate cause. A superior court judge denied the

motion to revise. Jackson then moved to vacate the parenting plan, child support order, and restraining order. In response, Malloy moved to restrict Jackson's abusive use of litigation and to renew the restraining order. The superior court found Jackson was engaging in abusive litigation, granted the renewed restraining order, and awarded Malloy attorney fees, but declined to restrict Jackson's ability to file further motions at that time.

Jackson appeals the order denying the motion to vacate, the order on the motion to restrict abusive litigation, the order denying the motion for revision, and the renewed restraining order. Her brief challenges other rulings that she failed to properly appeal. Malloy seeks attorney fees on appeal.

We affirm, and we grant Malloy attorney fees on appeal in an amount to be determined by a commissioner of this court.

FACTS

I. INITIAL PROCEEDINGS

Jackson began dating Malloy in 2016 and moved in with him in April 2017. The relationship ended in May 2017 in part because of Jackson's volatile behavior. Jackson told Malloy that she was pregnant shortly before the relationship ended. Malloy and Jackson had no contact for over a year until Jackson texted Malloy informing him that he had a son, who had been born in January 2018. Malloy, who was living in Oregon, began parentage proceedings. In February 2019, the Oregon Child Support Program entered an order establishing Malloy's parentage of MLM.

Malloy had a few visits with MLM and then pursued a parenting plan. Over Jackson's objection, Malloy asked the commissioner to either order Jackson to undergo a mental health

evaluation or appoint a guardian ad litem to investigate Jackson's "erratic behavior" and determine if further evaluations were necessary. Verbatim Report of Proceedings (VRP) (July 15, 2019) at 8. The commissioner declined to appoint a guardian ad litem to investigate Jackson. The commissioner allowed Malloy to have daytime visitation with MLM two days per week but required him to take a parenting class and obtain a domestic violence assessment with Jackson as a collateral contact before expanding his residential time.

Malloy completed the class and assessment, which did not recommend any additional treatment. The commissioner then granted Malloy one overnight visit and at least one video call with MLM per week.

Jackson hired at least four attorneys throughout the proceedings. Jackson's third attorney withdrew in February 2020, and another attorney entered a limited appearance in August 2020 for mediation, withdrawing that same month. Jackson was otherwise not represented after February 2020.

Early in September 2020, while the parties exchanged MLM at a police station, Jackson yelled at Malloy, shoved and threatened to shoot Malloy's mother, and came close to hitting Malloy with her car when leaving. Malloy's mother recorded the incident, and Jackson later threatened the responding police officer. The next week, Malloy requested a restraining order against Jackson and asked that MLM remain in his custody until the bench trial to set the final parenting plan. At a hearing, Malloy informed the commissioner that Jackson had contacted Child Protective Services to allege that Malloy was abusing MLM: "Those matters were not referred for investigation and that matter . . . is closed." VRP (Sept. 15, 2020) at 60. Malloy also informed the

commissioner that, although Jackson claimed that MLM had been prescribed respiratory medication and enrolled in day care, neither of those things was true.

The commissioner instructed the parties to conduct their exchanges at a specific restaurant and to not record or videotape the exchanges, which both sides had done in the past. And the commissioner ordered the parties to not disturb each other or go to each other's homes or workplaces.

During the bench trial, Malloy and other witnesses testified about Jackson's history of erratic behavior. Jackson offered as an exhibit a photograph of Malloy sitting in his kitchen at 11:00 p.m. in April 2020. Jackson testified that she was "around the neighborhood," going "to the store" when she took the photo. VRP (Oct. 12, 2020) at 190. Malloy testified that Jackson had failed to inform Malloy about MLM's health care or doctors, despite court orders to share that information with Malloy. When Jackson testified, she refused to answer questions posed by Malloy's counsel. In addition to other evidence of Jackson's behavior, the superior court also considered that Jackson's mother had previously requested several restraining orders against her.

The superior court entered a parenting plan that gave Malloy primary custody and limited Jackson's parenting time with MLM under RCW 26.09.191 because the court was concerned about Jackson's volatile behavior and mental health issues. The superior court found that Jackson had emotional problems that interfered with her parenting, engaged in abusive use of conflict, withheld MLM, and failed to abide by court orders, meriting RCW 26.09.191 limitations. The superior court placed sole custody of MLM with Malloy. The superior court found that Jackson was not credible and "that there is nothing from any other professional that supports her position or her allegations" that Malloy had harmed MLM. VRP (Oct. 13, 2020) at 81. The superior court instructed Malloy

to enroll MLM in a day care or preschool environment with mandatory reporters, "to protect [MLM], and, to a certain extent to protect Mr. Malloy." *Id.* at 83.

The superior court allowed Jackson to have only professionally supervised visitation with MLM and ordered her to enroll in a parenting class and undergo an in-depth mental health evaluation within six months, and comply with any recommended treatment. The superior court was concerned that Jackson "would not return the child" if she had unsupervised visitation with MLM. *Id.* at 82. Jackson could seek review of the visitation provisions once she completed the evaluation, treatment, and parenting class conditions. If she failed to meet the requirements or "to coordinate arrangements for supervision, she [would] have no right to unsupervised and/or in-person contacts with [MLM] and shall not be entitled to seek affirmative relief or review until such time as she comes into compliance." Clerk's Papers (CP) at 1088. The superior court ruled that Jackson was entitled to virtual contact with MLM three days per week through video calls.

The superior court also granted a one-year restraining order prohibiting Jackson from coming within 500 feet of Malloy and MLM's home, school, or workplace except for an authorized child exchange. The superior court ordered Jackson to pay Malloy child support beginning in November 2020. And the superior court ordered Jackson to pay Malloy attorney fees and sanctions for noncompliance with prior court orders.

## II. POSTTRIAL MOTIONS

Jackson moved for reconsideration in October 2020, February 2021, and March 2021. The rulings on these motions are not in our record but it appears that all three motions were denied or stricken.

5

A.     Petition to Modify the Parenting Plan

Jackson moved to modify the parenting plan in February 2021, alleging that Malloy was abusing MLM and that a lack of in-person contact with Jackson was detrimental to MLM's health. She was concerned that "no guardian ad litem or parenting/custody evaluator" had inspected Malloy's residence, and she argued that she could "clearly see [MLM] is not being well taken care of" because she heard Malloy tell MLM they had to go to the grocery store for food during a video call. CP at 10. She also moved to modify the child support order to remove her child support obligation and the judgment for fees and sanctions. And she requested a restraining order to remove MLM from Malloy's care and prohibit Malloy from contacting MLM based on her allegations of abuse.

The only proof of a mental health evaluation that Jackson submitted was a two-page assessment that did not use Malloy as a collateral contact or address various factors required by the superior court's order. She submitted proof that she had completed a child endangerment course.

At a hearing to determine if there was adequate cause to proceed with the motion to modify, Jackson alleged that Malloy was abusing MLM because Malloy lived in a one-bedroom apartment and she did not like how Malloy interacted with MLM during his video calls with Jackson. She told the commissioner that she had contacted the Oregon authorities to voice her concerns. Malloy informed the commissioner of the RCW 26.09.191 findings that the superior court had made against Jackson and the parameters of the assessment and treatment requirements that Jackson had failed to complete.

The commissioner found that there was not adequate cause to proceed with Jackson's petition and denied her motion to modify the parenting plan. The commissioner found no persuasive evidence of a "detrimental environment" in Malloy's home. CP at 250. The commissioner further found that Jackson's claims "were already addressed at trial" and that Jackson had not provided evidence that she had complied with the parenting plan's assessment or treatment requirements. *Id.* The commissioner found that Jackson "has made no effort to coordinate professional visitation services and has had no in-person contact with the child in over five months." *Id.* The commissioner ordered Jackson to secure a mental health evaluation and "comply with [the] terms for visitation as previously ordered." *Id.*

Jackson moved to revise the order on adequate cause in April 2021. A superior court judge denied Jackson's motion, explaining that Jackson "has failed, to this point, to meet the burden of proving adequate cause for the petition to move forward." CP at 281. The superior court again ordered Jackson to satisfy the mental health assessment and treatment requirements of the parenting plan. The superior court also awarded Malloy attorney fees associated with the motion for revision due to Jackson's failure to comply with the local rules. Jackson timely appealed the order denying the motion for revision.

B.     Jackson's Motion to Vacate and Malloy's Motion to Restrict Abusive Litigation

In October 2021, Jackson timely moved to vacate the parenting plan, child support order, and initial restraining order under CR 60 on grounds of mistake and newly discovered evidence. Jackson argued, "[T]he orders were incorrectly entered, unjustified, and the trial was not fair and testimony and evidence presented [was] not properly received." CP at 1134. She also sought relief

from her child support obligation and requested appointment of a guardian ad litem to investigate Malloy.

Jackson's motion repeated various statements that she had made at trial, then accused the court of "just sign[ing] off on Malloy's orders." CP at 1124. She also accused child welfare officials of manipulating their reports under Malloy's influence. She argued that the child support order imputing a monthly income of $2,193 overstated her earnings. The only evidence she presented that is dated after the trial amounted to assertions that "Malloy waits until it[ is] my Zoom time to occupy and engage my child, as to distract him from communicating with me, further destroying our relationship," and that an "officer following a welfare check informed me that Malloy claims he sleeps in the living room on the couch." CP at 1130-31.

When opposing the motion to vacate, Malloy moved to restrict Jackson from abusive use of litigation and asked the superior court to renew the restraining order for five years. Malloy argued that in addition to her multiple motions, Jackson had filed several complaints with law enforcement, as well as "Oregon Department of Human Services, Division of Child Protective Services, resulting in child welfare checks and inquiries." CP at 1200. "[T]he Department has visited [Malloy's] home in response to 'anonymous reports' left with the National Child Abuse Hotline[] wherein the reporter claims that Mr. Malloy is ostensibly trying to 'sell the child on the black market.'" CP at 1200-01.

Jackson did not respond to the motion to restrict abusive litigation, nor did she attend the hearing addressing both that motion and her motion to vacate. The superior court found that Jackson's multiple court filings were abusive use of litigation, but it declined to prohibit her from further filings at that time and denied the motion to restrict abusive litigation without prejudice.

The superior court denied Jackson's motion to vacate and awarded Malloy $500 in attorney fees for the hearing due to Jackson's failure to respond or appear in support of her own motion.

The superior court also reissued the restraining order against Jackson for five years. The renewed order limited Jackson's ability to contact authorities about Malloy: "[Jackson] must not contact Law Enforcement, Child Protective Services, or any other agency for purposes of making complaints about the Protected Person . . . without pre-authorization." CP at 1354.

Jackson appeals the order denying the motion to vacate, the order on the motion to restrict abusive litigation, the order denying the motion for revision, and the renewed restraining order. Jackson also argues that the superior court erred by failing to appoint a guardian ad litem to investigate Malloy, by finding no adequate cause for modification, and by entering the parenting plan, child support order, and initial restraining order. The parenting plan, child support order, initial restraining order, and order denying adequate cause are not properly designated in any notice of appeal. No ruling on a guardian ad litem appears in any appealed order. Malloy seeks attorney fees on appeal.

ANALYSIS

I. SCOPE OF APPEAL

Jackson argues that the superior court erred in awarding Malloy custody of MLM, ordering Jackson to pay child support, and imposing the initial restraining order. RAP 2.4(b) provides that appellate courts "will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review." Jackson properly appealed only the order denying the motion to vacate the superior

court's orders, the order on the motion to restrict abusive litigation, the order denying her motion for revision of the adequate cause decision, and the renewed restraining order. An appeal from the denial of a CR 60 motion is not a substitute for an appeal of the underlying order, so we do not review the original orders awarding Malloy custody and ordering Jackson to pay child support. *See In re Dependency of J.M.R.*, 160 Wn. App. 929, 938-39 n.4, 249 P.3d 193 (2011). Moreover, the renewed restraining order that Jackson appealed was not dependent on the initial restraining order, and Jackson did not appeal the initial restraining order. Thus, our review is limited to the propriety of the CR 60 ruling and other properly appealed orders.

Jackson also argues that the superior court erred by "not appointing a guardian ad litem to investigate claims and evidence" before ruling on her motion to modify the parenting plan. Appellant's Opening Br. at 13. None of the appealed orders contains any ruling on the appointment of a guardian ad litem, so the failure to appoint a guardian ad litem is not properly before us on appeal.

## II. MOTION TO VACATE THE PARENTING PLAN, CHILD SUPPORT ORDER, AND INITIAL RESTRAINING ORDER

Jackson argues that the superior court erred by denying her CR 60 motion to vacate the parenting plan, child support order, and initial restraining order. She also contends that the superior court erred by hearing the motion to restrict abusive litigation without her present. We disagree.

Below, Jackson relied on CR 60(a), addressing clerical mistakes in a judgment or order. She also sought relief under CR 60(b)(1), (3), and (11), allowing a court to vacate a judgment in circumstances such as mistake, newly discovered evidence, and "[a]ny other reason justifying relief." CR 60(b)(11). "The use of CR 60(b)(11) should be confined to situations involving extraordinary circumstances not covered by any other section of the rule." *Barr v. MacGugan*, 119

Wn. App. 43, 46, 78 P.3d 660 (2003) (internal quotation marks omitted) (quoting *Gustafson v. Gustafson,* 54 Wn. App. 66, 75, 772 P.2d 1031 (1989)).

Jackson argued in her CR 60 motion that the parenting plan and child support order were "incorrectly entered, unjustified, and the trial was not fair and testimony and evidence presented [was] not properly received." CP at 1134. She restated many assertions that she made at the trial, including that Malloy had abused both Jackson and MLM. She contended that Malloy was seeking to damage her relationship with MLM by distracting and entertaining MLM during video calls. She also insisted that Malloy and his parents had conspired with, among others, Washington and Oregon child welfare services case workers, a visitation supervisor, police officers, mental health service providers, both of Jackson's attorneys, and several judicial officers. Jackson repeats these allegations on appeal.

We review a superior court's ruling on a CR 60(b) motion for abuse of discretion. *Barr*, 119 Wn. App. at 46. "A court abuses its discretion when its decision is based on untenable grounds or reasoning." *Id.*

Jackson did not offer any evidence that met any of the standards for relief under CR 60(b). No child welfare or law enforcement agency found that Malloy was abusing MLM. And there is no evidence to support Jackson's assertions that Malloy has corrupted or manipulated various people, including an array of government officials and court employees. The superior court did not abuse its discretion by denying Jackson's motion to vacate the parenting plan.

Below, Jackson also sought to vacate the child support order under CR 60(c), which provides, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding." She argued that the trial court erred by imputing

11

her income at $2,193 per month, the amount that she made when she was last employed. She testified at trial that she was not employed or enrolled in school and refused to answer questions about her work history. On appeal, she contends that she does not have the ability to pay child support, even though "[u]nlike Malloy I have been a working and functional adult since I was a teen, [and] no one but myself has ever paid my []bills." Reply Br. at 32. There is no information in the record indicating that Jackson is unable to find work that matches the superior court's imputed income, given that she asserts that she works from 8:00 a.m. until 5:30 p.m. in a stable job, without providing any further detail. The superior court did not abuse its discretion by denying her motion to vacate the child support order.

Jackson's motion to vacate did not identify a specific CR 60 basis for vacating the initial restraining order. On appeal, she argues only that the initial restraining order was not properly issued because she has not been found guilty of a domestic violence offense. At trial, Jackson offered a photograph of Malloy in his house that she took at 11:00 p.m. The superior court also considered the prior restraining orders requested by Jackson's mother. The superior court found that Jackson "represent[ed] a credible threat to" Malloy's physical safety. CP at 1079. Jackson's motion to vacate articulated no valid basis for relief from the order.

Jackson offers no evidence to support her assertion that she did not receive notice of the hearing on the motion to restrict abusive litigation. Jackson had an opportunity to be heard on the motion because the motion was heard in the same hearing as Jackson's own motion to vacate. The superior court declined to restrict Jackson's ability to make further filings, and Jackson's absence from a hearing of which she had notice does not justify reversing the superior court's order.

The superior court did not abuse its discretion by denying Jackson's motion to vacate the parenting plan, child support order, and initial restraining order.

### III. MOTION FOR REVISION OF THE ORDER ON ADEQUATE CAUSE

Jackson argues the superior court abused its discretion by denying her motion to revise the order finding no adequate cause to modify the parenting plan. She contends that the superior court allowed Malloy's attorney to improperly influence its ruling.[1] We disagree.

"When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's." *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). But a denial of revision "constitutes an adoption of the commissioner's decision." *Id*. at 27-28.

A party seeking to modify a parenting plan must show "adequate cause for modification before the court will permit a full hearing on the matter." *In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010). RCW 26.09.260(1) limits the circumstances in which a court may modify a parenting plan:

> [T]he court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

---

[1] She also assigns error to the money judgment the superior court awarded Malloy based on Jackson's failure to comply with the local rules. But she does not articulate an argument on this point in the body of her brief. We may decline to review assignments of error that are not supported by argument or citation to legal authority. *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008).

A superior court "abuses its discretion if it fails to follow the [RCW 26.09.260] procedures or modifies a parenting plan for reasons other than the statutory criteria." *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). And the information presented to support a hearing "should be something that was not considered in the original parenting plan." *In re Parentage of Jannot*, 110 Wn. App. 16, 25, 37 P.3d 1265 (2002).

The only new information Jackson offered in her motion to modify was assertions that MLM was being abused because he lived in a one-bedroom apartment with Malloy and interacted with Malloy during Jackson's video calls. The commissioner found no credible evidence to demonstrate that there had been a substantial change in circumstances or that Jackson had secured the evaluation and parenting classes required by the superior court before her visitation could be changed.

Upon seeking revision of the order denying adequate cause, Jackson failed to offer any new substantive information or proof, and she failed to provide the superior court with a full record of the adequate cause proceeding. The superior court found that Jackson had failed "to meet the burden of proving adequate cause for the petition to move forward." CP at 281. And the record contains no evidence of Malloy abusing MLM. Thus, Jackson has not shown that the superior court abused its discretion by denying Jackson's motion to revise the decision on adequate cause.

IV. RENEWED RESTRAINING ORDER

Jackson argues that the superior court erred by issuing the renewed restraining order based solely on Malloy's claims "and without seeing all evidence from both parties." Appellant's Opening Br. at 14. We disagree.

A court presiding over a family law matter may issue "any necessary continuing restraining orders," including "the restraint provisions of a domestic violence protection order or an antiharassment protection order." RCW 26.09.050(1). We review a decision to grant a protection order for abuse of discretion. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). The one-year limit on protection orders that limit contact with a respondent's minor children does not apply to orders issued under chapter 26.09 RCW. Former RCW 26.50.060(2) (2020), *repealed by* LAWS OF 2021, ch. 215, § 170; RCW 7.105.315(2)(a).

The renewed restraining order took effect in October 2021 and will last until October 2026. It includes a prohibition on contacting law enforcement or child services about Malloy without court authorization. There was evidence before the superior court that, when Malloy spent time with MLM, Jackson would follow him and attempt to secure incriminating evidence, such as photographing his residence late at night. Once Malloy had custody of MLM, Jackson began reporting him to various agencies based on her perceptions of her video calls with MLM. The only mental health evaluation that Jackson submitted fell well short of the requirements set by the superior court. And her motion to vacate alleged that she had seen MLM "coming from some unknown person's house," indicating that she may have again been following Malloy, which would constitute a violation of the initial restraining order. CP at 1131. There was no substantive change in the behavior the superior court found concerning, and similar behavior has continued since MLM was removed from Jackson's custody. To the extent Jackson's briefing suggests she is still watching Malloy at his workplace and watching MLM and Malloy at or near their home, violations of the restraining order could lead to prosecution. The superior court did not err when it issued the renewed restraining order.

ATTORNEY FEES

Malloy seeks attorney fees on appeal as a sanction under RAP 18.9(a). Malloy argues that Jackson has presented no debatable issues and there is no possibility of reversal, rendering the appeal frivolous. We agree.

RAP 18.9(a) authorizes an appellate court to order a party who "files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed" by their actions. "Sanctions may include, as compensatory damages, an award of attorney's fees to the opposing party." *Camer v. Seattle Sch. Dist. No. 1*, 52 Wn. App. 531, 540, 762 P.2d 356 (1988). An appeal is frivolous if, after considering the entire record, the court "is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). "[W]e resolve all doubts [about] whether an appeal is frivolous in favor of the appellant". *Id*; *see also Camer*, 52 Wn. App. at 540 (holding that appeal presenting essentially the same issues and claims that appellants had lost on in two prior cases was frivolous).

This appeal contains the same claims and arguments that were previously defeated at trial, and again when Jackson sought modification, and again when she moved to revise, and again when she moved to vacate. Various judicial officers told Jackson on multiple occasions why these arguments were unsuccessful and what she had to do to increase her visitation with MLM. As a result, we award Malloy attorney fees in an amount to be determined by a commissioner of this court.

No. 55867-0-II

CONCLUSION

We affirm, and we award Malloy attorney fees on appeal in an amount to be determined by a commissioner of this court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Worswick, J.

Maxa, J.

17